ORIGINAL

# In the United States Court of Federal Claims

**No. 17-928T**
**Filed: March 8, 2018**

FILED
MAR - 8 2018
U.S. COURT OF FEDERAL CLAIMS

* * * * * * * * * * * * * * * * * * * * *

**GARY D. MEISSNER and CONNIE R. MEISSNER,**

**Plaintiffs,**

**v.**

**UNITED STATES,**

**Defendant.**

* * * * * * * * * * * * * * * * * * * * *

**Tax; Motion to Dismiss; RCFC 12(b)(1)**

**Gary D. Meissner** and **Connie R. Meissner**, Avondale, AZ, pro se.

**Jason S. Selmont**, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C. for the defendant. With him were **Mary M. Abate**, Assistant Chief, Court of Federal Claims Section, **David I. Pincus**, Chief, Court of Federal Claims Section, and **Richard E. Zuckerman**, Principal Deputy Assistant Attorney General, Tax Division, United States Department of Justice.

## OPINION

**HORN, J.**

## FINDINGS OF FACT

Plaintiffs, Gary and Connie Meissner, filed a pro se complaint in the United States Court of Federal Claims. Their complaint alleges that the Internal Revenue Service (IRS) owes them refunds of alleged tax overpayments totaling at least $67,931.00 for the 2014 and 2015 tax years. Plaintiffs allege that the IRS improperly calculated the amount of federal taxes plaintiffs were required to pay on their joint tax returns for both years. Plaintiffs also assert that the wages paid to them by their employers during the tax years in question were not eligible for federal taxation. Before the court is defendant's motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction. Defendant argues that because plaintiffs have failed to plead sufficient facts to establish that they filed a valid refund claim for either of the tax years for which they now seek a refund, this court should dismiss the complaint. Plaintiffs filed a response arguing that the tax Forms they submitted met all requirements in order to constitute valid claims for refund. Defendant's

7016 3010 0000 4308 4355

reply reiterated its assertions of administrative deficiencies and resulting lack of jurisdiction.

During the 2014 tax year, Mr. Meissner was employed by Rohr Inc. During that same 2014 tax year, Mrs. Meissner was employed by Southern California Permanente Medical Group. For the 2014 tax year, the IRS received W-2s for plaintiffs which indicated a combined total income of $132,907.00. Plaintiffs represent that they mailed their joint 2014 federal income tax return, a Form 1040, titled "U.S. Individual Income Tax Return," on February 5, 2015. On that return, plaintiffs included wages received in the amount of zero dollars and a total income of zero dollars. Along with their 2014 return, plaintiffs filed two Forms 4852, titled "Substitute for Form W-2, Wage and Tax Statement, or Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc.," both of which disputed the income listed in their employers' W-2 Forms and indicated that plaintiffs both had earned an income of zero dollars. In responding to question 9 on the Form 4852, which asks: "How did you determine the amounts on line 7 and 8 [wages and withholdings] above," plaintiffs each responded "RECORDS PROVIDED BY THE PAYER LISTED ON LINE 5." (capitalization in original). Additionally, both plaintiffs provided no response to question 10 which asks for information concerning "efforts to obtain Form W-2, Form 1099-R, or Form W-2c, Corrected Wage and Tax Statement." On both their Form 1040 and Forms 4852, plaintiffs enumerated federal income tax, Medicare, and Social Security withholdings by the federal government in the amount of $26,176.50, which they now seek be refunded.[1] Additionally, plaintiffs each attached an identical affidavit to their joint 2014 return, contesting the constitutionality of withholding federal taxes from their income.

Upon receiving plaintiffs' Forms, the IRS sent plaintiffs a letter on March 18, 2015. In this letter, the IRS requested plaintiffs provide additional information regarding the "wage or withholding entry of $26,176.95" and requested that plaintiffs submit additional documents supporting this figure. Plaintiffs responded to this letter on March 23, 2015, stating that they would not submit the additional requested forms because they believed they contained "erroneous information." Additionally, plaintiffs indicated that they believed "'taxable income'" does not encompass "'all that comes in.'"

On May 11, 2015, the IRS informed plaintiffs in a letter that the IRS had made changes to their 2014 Form 1040. These changes included subtracting the Social Security tax and Medicare tax withholdings that plaintiffs had included as part of their federal withholdings, thereby rendering plaintiffs' federal withholdings to only include federal income tax withholdings. The IRS then processed plaintiffs' 2014 return using the reported income of zero dollars. The May 11, 2015 letter stated "[a]s a result, you are due a refund of $15,623.00." On August 17, 2015, plaintiffs responded to the changes made

---

[1] Plaintiffs also enumerated State income tax withholdings for both the 2014 and 2015 tax years in the amount of $5,153.52 and $8,491.63, respectively. Plaintiffs, however, do not appear to contest that they owed these sums in this court and do not appear to request the return of their State income tax withholdings for the 2014 and 2015 tax years in the case currently before the court.

by the IRS to their return and reiterated that they had no taxable income and demanded that the IRS remit their total claimed refund amount of $26,176.50. Plaintiffs also pointed out that, even after this recalculation, the IRS has not sent them any funds.

This process repeated with few variations for the 2015 tax year. For that year, the IRS received W-2s for plaintiffs indicating a combined total income of $216,410.29. Plaintiffs mailed their joint 2015 federal income tax return on March 16, 2016. On that return, plaintiffs once again indicated wages in the amount of zero dollars, but reported a total income of $24.29.[2] As they had done the previous year, plaintiffs each filed a Form 4852 disputing the income provided by their employers' W-2 forms for tax year 2015. Plaintiffs contended that, instead, they had both earned an income of zero dollars. In responding to question 9 on his Form 4852, which asks, "How did you determine the amounts on line 7 and 8 [wages and withholdings] above," Mr. Meissner responded

> After a complete review of 26 USC, the IRC [Internal Revenue Code], and case law, the erroneously allege [sic] "wages" by the payer are clearly not those described in section 3121 of part 31 of the law, nor am I their "employee' under 3401(c) of the same. [T]hese earnings are NOT based on activities of Federal privilege for which the taxes are devised (as upheld by the Supreme Court).

(emphasis added). Similarly, Mrs. Meissner, in response to the same question on her Form 4852, stated "Company provided a W-2 which erroneously alleged payments of IRC sec. 3121 and 3401 wages, hereby disputed."

With respect to question 10 on Form 4852 which, as stated above, asks for information concerning efforts to obtain documentation that can verify the amounts reported on the form, Mr. Meissner stated "[a] request for which they scoffed because they are ignorant of the laws and the IRC about 'wages' and 'income' and 'employee.' [T]heir position is reinforced by their accounting firm and their fear of the IRS retaliation." Regarding the same question, Mrs. Meissner stated "none." Along with these statements, plaintiffs reported a combined total of $26,270.73 in federal income, Social Security, and Medicare tax withholdings for tax year 2015, which they seek to have refunded.

Additionally, Mr. Meissner filed an additional Form 4852 regarding a retirement distribution of $76,923.00, which Mr. Meissner received in 2015. Instead of submitting the Form 1099-R issued to him by the administrator of his retirement plan, Mr. Meissner filed a Form 4852 on behalf of his retirement plan administrator, State Street Retiree Services for UTC Employee Savings Plan. On the form, Mr. Meissner claimed zero dollars as a gross distribution, while simultaneously reporting $15,384.62 in federal income tax withholdings. In responding to question 9 on Form 4852, which asks, "[h]ow did you determine the amounts on line 7 and 8 [wages and withholdings] above," Mr. Meissner responded "[m]onies in my savings plan came from my biweekly contributions and has no federal privileged connection[.] I was provided a 1099R which erroneously alleged

[2] Plaintiffs appear to have received taxable interest income in 2015 totaling $24.29.

payments of IRC section 3121 and 3401 wages, hereby disputed." With respect to question 10 on Form 4852 for Mr. Meissner's retirement distribution, which, as stated above, asks for information concerning efforts to obtain documentation that can verify the amounts reported on the form, Mr. Meissner stated "I asked the payer not to deduct taxes from my monies but claimed they had to per IRS instructions." In total, plaintiffs indicate on their Form 1040 for the 2015 tax year that they are entitled to $41,755.35[3] due to overpayments made during the 2015 tax year.

Along with their tax Forms for the 2015 tax year, plaintiffs included a letter indicating that they were rebutting the original W-2s that their employers had provided to the IRS. Plaintiffs' letter states, "[t]he companies erroneously alleged payments of Internal Revenue Code (IRC) sections 3121 & 3401 wages that are hereby disputed." Moreover, plaintiffs described themselves as "private sector citizens (non-federal employees) employed by private-sector companies (non-federal entity) as defined in 3401(c)(d). [Plaintiffs] are not employed in a 'Trade or Business' nor are [plaintiffs] 'Officers of a Corporation'. The amounts listed as withheld on the W2's and the 1099-R are correct." Included with the letter were identical affidavits signed respectively by Gary D. Meissner and Connie R. Meissner stating:

> **TO WHOM IT MAY CONCERN**: IN PARTICULAR, TO ANYONE WHO THINKS THAT HE OR SHE IS REQUIRED TO FILE AN IRS **FORM W-2** OR IRS **FORM 1099** ABOUT ME BUT WHO HAS ***NOT*** PAID TO ME ***FEDERALLY***-CONNECTED MONEY FOR ***FEDERALLY***-CONNECTED SERVICE PERFORMED BY ME OR HAS NOT PAID TO ME ANY ***FEDERALLY***-CONNECTED BENEFIT RECEIVED BY ME.

(emphasis and capitalization in original). Plaintiffs' affidavits regarding their 2015 return filed with the IRS repeated the contentions plaintiffs' had previously made as to why they believed that the money paid to them by their employers was exempt from federal taxation. Plaintiffs stated that they "have never been a resident or citizen of the *federal* District of Columbia or of any federal state, enclave or territory." (emphasis in original). Plaintiffs also list that they "have never been an 'employee' (as defined in 26 U.S.C. § 3401(c)), who earned 'wages' (as defined in 26 U.S.C. § 3401(a)) that were paid to me by an 'employer' (as defined in 26 U.S.C. § 3401(d))." Plaintiffs continue by stating they "have never been in a 'trade or business' (as defined in 26 U.S.C. § 7701(a)(26))," nor have plaintiffs ever "been an officer or employee of a 'United States Corporation' (as defined in section 207 of the Public Salary Act)."

The IRS sent plaintiffs a letter on April 15, 2016 requesting more information from the plaintiffs in order to properly process their 2015 claims. Specifically, the IRS requested documentation to support the amount of wage withholdings reported by plaintiffs. Plaintiffs sent a letter responding to this request indicating that they "would be remiss to furnish

[3] The court notes that while plaintiffs' Form 1040 indicate withholdings in the amount of $41,755.35 for the 2015 tax year, the individually enumerated federal withholdings reported by plaintiffs on their multiple Forms 4852 amount to only $ 41,655.35.

[the IRS] with a W-2 which contains erroneous information." Repeating the language included in their previously provided affidavits, on July 6, 2017, plaintiffs' sent a joint response letter stating, "[w]e are private sector citizens (non-federal employee) employed by private sector companies (non-federal entity) as defined in IRC 3401 & 3121. We are not employed in a 'trade or business' nor are we 'officers of a corporation'."

On April 17, 2017, the IRS informed plaintiffs that the IRS had made changes to their 2015 tax year Form 1040. These changes included subtracting the Social Security tax and Medicare tax withholdings that plaintiffs had included as part of their withholdings, leaving only federal income tax withholdings. The IRS then processed plaintiffs return using the reported income of zero dollars. This process resulted in the IRS calculating a refund amount of $31,907.72. Plaintiffs were informed of these changes and the resulting remaining, total, withheld amount in a letter. As with the year before, plaintiffs demanded refund of the monies. Plaintiffs also pointed out that the IRS has not sent them any funds even after the recalculation. Subsequently, plaintiffs filed their complaint in this court seeking "at least $67,931.00 plus interest as allowed by law." Defendant filed a motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction.

## DISCUSSION

The court recognizes that plaintiffs are proceeding pro se. When determining whether a complaint filed by pro se plaintiffs is sufficient to invoke review by a court, pro se plaintiffs are entitled to a more liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524, aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied, 135 S. Ct. 1909 (2015). However, "there is no 'duty [on the part] of the trial court . . . to create a claim which [plaintiff] has not spelled out in his [or her] pleading . . . .'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9; and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995)); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such

leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

In this court, the defendant has challenged this court's subject matter jurisdiction to adjudicate plaintiffs' complaint arguing that not all the administrative requirements have been met in order to file a tax refund claim in this court. "Subject-matter may be challenged at any time by the parties or by the court *sua sponte*." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); see also Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1346 (Fed. Cir. 2008); Fanning, Phillips, Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998); Booth v. United States, 990 F.2d 617, 620 (Fed. Cir.), reh'g denied (Fed. Cir. 1993); United States v. Newport News Shipbuilding and Dry Dock Co., 933 F.2d 996, 998 n.1 (Fed. Cir. 1991); Thompson v. United States, 88 Fed. Cl. 263, 266 (2009), aff'd, 480 F. App'x 575 (Fed. Cir. 2012); N. Star Alaska Hous. Corp. v. United States, 76 Fed. Cl. 158, 185, appeal dismissed, 226 F. App'x 1004 (Fed. Cir. 2007). "In fact, a court has a duty to inquire into its jurisdiction to hear and decide a case." Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990)); see also Entegris, Inc. v. Pall Corp., 490 F.3d 1340, 1343 (Fed. Cir. 2007); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not.").

Pursuant to Rule 8(a) of the Rules of the United States Court of Federal Claims (RCFC) and Rule 8(a) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2017); Fed. R. Civ. P. 8(a)(1), (2) (2017); see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555-57, 570). However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Edelmann v. United States, 76 Fed. Cl. 376, 379 (2007). "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)); Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981) ("[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss."), aff'd, 460 U.S. 325 (1983). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' [Bell Atlantic Corp. v. Twombly,] 550 U.S. at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557).

When deciding a case based on a lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006); Boise Cascade Corp. v. United States, 296 F.3d 1339, 1343 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002), cert. denied, 538 U.S. 906 (2003); Pixton v. B & B Plastics, Inc., 291 F.3d 1324, 1326 (Fed. Cir. 2002); Commonwealth Edison Co. v. United States, 271 F.3d 1327, 1338 (Fed. Cir. 2001) (quoting New Valley Corp. v. United States, 119 F.3d 1576, 1580 (Fed. Cir. 1997)), cert. denied, 535 U.S. 1096 (2002); Boyle v. United States, 200 F.3d 1369, 1372 (Fed. Cir. 2000).

The Tucker Act grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on Federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Testan, 424 U.S. 392, 400 (1976); Greenlee Cty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999); Stinson, Lyons & Bustamante, P.A. v. United States, 33 Fed. Cl. 474, 478 (1995), aff'd, 79 F.3d 136 (Fed. Cir. 1996).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. 206, 216 (1983); see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343 ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."). In Ontario Power Generation, Inc. v. United States, 369 F.3d 1298 (Fed. Cir. 2004), the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954))). . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S. [Corp. v. United States], 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v.] Testan, 424 U.S. [392,] 401-02, 96 S. Ct. 948 ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself...can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S. [Corp. v. United States], 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ont. Power Generation, Inc. v. United States, 369 F.3d at 1301.

To prove that a statute or regulation is money mandating, plaintiff must demonstrate that an independent source of substantive law relied upon "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." United States v. Mitchell, 463 U.S. at 217 (internal quotation marks and citations omitted); see also Hamlet v. United States, 63 F.3d 1097, 1107 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed. Cir. 1995), cert. denied, 517 U.S. 1155 (1996). "Additionally, the specific authority granting money relief must be distinct from the Tucker Act itself." Cottrell v. United States, 42 Fed. Cl. 144, 152 (1998). "If the court's conclusion is that the source as alleged and pleaded is not money-mandating, the court shall so declare, and shall dismiss for lack of jurisdiction, a Rule 12(b)(1) dismissal - the absence of a money-mandating source being fatal to the court's jurisdiction under the Tucker Act." Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005); see also Doe v. United States, 74 Fed. Cl. 794, 796 (2006). The United States Court of Federal Claims has jurisdiction over actions against the United States "for the recovery of internal-revenue taxes alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." 28 U.S.C. § 1346(a) (2012); Ishler v. United States, 115 Fed. Cl. 530, 534 (2014). "[W]hether

sovereign immunity has been waived and the Court of Federal Claims has jurisdiction over these refund claims depends on whether the taxpayers' submissions to the IRS constitute a claim for refund." Waltner v. United States, 679 F.3d 1329, 1333 (Fed. Cir. 2012), cert. denied, 568 U.S. 886, reh'g denied, 568 U.S. 1044 (2012). Section 7422(a) functions as a waiver of the government's sovereign immunity in tax refund suits. Chi. Milwaukee Corp. v. United States, 40 F.3d 373, 374 (Fed. Cir. 1994); see also Gluck v. United States, 84 Fed. Cl. 609, 613 (2008). "[S]ection 7422(a) creates a jurisdictional prerequisite to filing a refund suit." Gluck v. United States, 84 Fed. Cl. at 613 (citing Chi. Milwaukee Corp. v. United States, 40 F.3d at 374 (citing Burlington N., Inc. v. United States, 231 Ct. Cl. 222, 684 F.2d 866, 868 (1982))).

The United States Supreme Court has indicated that:

> A taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government either in United States district court or in the United States Court of Federal Claims. The Internal Revenue Code specifies that before doing so, the taxpayer must comply with the tax refund scheme established in the Code. That scheme provides that a claim for a refund must be filed with the Internal Revenue Service (IRS) before suit can be brought, and establishes strict timeframes for filing such a claim.

United States v. Clintwood Elkhorn Mining Co., 553 U.S. 1, 4 (2008) (citations omitted); see also RadioShack Corp. v. United States, 566 F.3d at 1360 ("[I]n the context of tax refund suits, the [Supreme] Court has held that the Court of Federal Claims' Tucker Act jurisdiction is limited by the Internal Revenue Code, including 26 U.S.C. § 7422(a)."). Once a party has established compliance with 26 U.S.C. § 7422(a), the party may, if successful, also recover interest for its claim for refund, if successful. See Deutsche Bank AG v. United States, 95 Fed. Cl. 423, 427 n.3 (2010) ("There is no question, however, that this court has subject matter jurisdiction under the Tucker Act, 28 U.S.C. § 1491 (2006), over claims, such as the present one, seeking to recover statutory interest on income tax refunds." (citing Brown & Williamson, Ltd. v. United States, 231 Ct. Cl. 413, 688 F.2d 747, 752 (1982))), aff'd, 742 F.3d 1378 (Fed. Cir. 2014).

For this court to exercise jurisdiction over a plaintiff's federal tax refund claim, a petitioning party must first satisfy the tax refund schematic detailed in Title 26 of the Internal Revenue Code, (see, e.g., 26 U.S.C. § 7422 (2012) and 26 U.S.C. § 6511 (2012)), which establish that a claim for refund must be filed with the IRS before filing suit in federal court, as well as strict deadlines for filing such claims. See United States v. Clintwood Elkhorn Mining Co., 553 U.S. at 4; Kiselis v. United States, 131 Fed. Cl. 54, 60 (2017) ("To establish jurisdiction, Plaintiff must establish that he filed an administrative refund claim with the IRS prior to filing suit in this Court."); Fremuth v. United States, 129 Fed. Cl. 684, 688 (2016) ("This Court's exercise of [tax refund] jurisdiction is subject, however, to several statutory and jurisprudential prerequisites."); Dumon v. United States, 85 Fed. Cl. 425, 428 ("To recover under the Tucker Act, a plaintiff must adhere to the requirements of 26 U.S.C. § 7422(a), which states that 'no such suit shall be maintained

in any court . . . until a claim for refund or credit has been duly filed with the Secretary.'" (quoting 26 U.S.C. § 7422(a)) aff'd, 345 F. App'x 586 (Fed. Cir. 2009); see also United States v. Dalm, 494 U.S. 596, 609-10, reh'g denied, 495 U.S. 941 (1990); Smith v. United States, 111 Fed. Cl. 740, 443 (2013) (noting that Congress intended for 26 U.S.C. § 7422(a) to apply broadly); Buser v. United States, 85 Fed. Cl. 248, 256 (2009).

Moreover, for a refund claim, the court only may hear claims for which the petitioning taxpayer has fulfilled all of his or her tax liabilities for the tax year in question before the refund claim is heard. Flora v. United States, 357 U.S. 63, 72-73 (1958) (Flora I), aff'd on reh'g, 362 U.S. 145 (Flora II), reh'g denied, 362 U.S. 972 (1960). In Flora II, the United States Supreme Court stated that 28 U.S.C. § 1346(a)(1) requires "payment of the full tax before suit . . . ."[4] Flora II, 362 U.S. 145, 150-151, reh'g denied, 362 U.S. 972 (1960); see also Shore v. United States, 9 F.3d 1524, 1526 (Fed. Cir. 1993) ("The full payment requirement of Section 1346(a)(1) and Flora applies equally to tax refund suits brought in the Court of Federal Claims . . . .") (citing Tonasket v. United States, 218 Ct. Cl. 709, 711-12, 590 F.2d 343 (1978)).

As noted above, before filing a tax refund claim in federal court, a plaintiff is required to file a claim with the IRS for the amount of the alleged refund, pursuant to 26 U.S.C. § 7422(a), which states:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a); see also Computervision Corp. v. United States, 445 F.3d 1355, 1363 (Fed. Cir.), reh'g and reh'g en banc denied, 467 F.3d 1322 (Fed. Cir. 2006), cert. denied, 549 U.S. 1338 (2007); Cooper v. United States, 123 Fed. Cl. 226, 232 (2015)

---

[4] Section 1346(a) reads, in part:

> The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
>
> (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws . . . .

28 U.S.C. § 1346(a)(1).

(holding that because plaintiff's tax forms did not comply with the requirements of 26 U.S.C. § 7422, the returns could not constitute duly filed refund claims).

Plaintiffs' complaint claims that, to date, defendant owes them "at least $67,931.00," plus interest, for alleged tax overpayments in tax years 2014 and 2015.[5] Plaintiffs allege that their returns for the 2014 and 2015 tax years indicate zero dollar tax liability, and that the amounts withheld were deducted from "non-wage amounts." Further, plaintiffs argue that the IRS lacked the authority to amend their tax forms which resulted in the lower refund amounts and that they have met the requirements to file their refund claims in this court. Arguing that plaintiffs have failed to allege that they filed valid claims for refund according to Treasury Regulations, specifically, 26 C.F.R. §§ 301.5402-2(c), 301.6402-3(a)(1), (a)(5), defendant asserts that this court lacks subject matter jurisdiction to adjudicate plaintiffs' claims pursuant to RCFC 12(b)(1). Defendant contends that plaintiffs did not first file proper administrative claims for refund pursuant to 26 U.S.C. § 7422(a), and that the government, therefore, has not waived its sovereign immunity. Although defendant agrees that plaintiffs filed timely tax returns for both the 2014 and 2015 tax years, defendant asserts that plaintiffs' tax forms were not "'properly executed'" and, thus, plaintiffs have not satisfied the requirements of first filing with the IRS timely and sufficiently informative, valid claims for refund or credit of the taxes prior to bringing their case to this court.

According to defendant, there is a generally agreed upon four-part test for determining whether a defective or incomplete document is a valid return.

> "First, there must be sufficient data to calculate tax liability; second, the document must purport to be a return; third, there must be an honest and reasonable attempt to satisfy the requirements of the tax law; and fourth the taxpayer must execute the return by signing it under penalty of perjury."

Diamond v. United States, 107 Fed. Cl. 702, 705 (2012) (quoting Beard v. Commissioner, 82 T.C. 766, 777 (1984), aff'd, 793 F.2d 139 (6th. Cir. 1986)), aff'd, 530 F. App'x 943 (Fed. Cir. 2013), cert. denied, 134 S. Ct. 1344 (2014); see also Kiselis v. United States, 131 Fed. Cl. at 60. "A purported return that does not satisfy all four conditions does not play the role that a tax return is intended to play in a system, which is our federal tax system, of self-assessment." In re Payne, 431 F.3d 1055, 1057 (7th Cir. 2005); see also Stelco Holding Co. v. United States, 42 Fed. Cl. 101, 104 ("It is firmly settled that a properly filed administrative claim for refund is the indispensable prerequisite to this court's exercise of jurisdiction over a taxpayer's suit for refund." (citations omitted)), recons. denied, 42 Fed. Cl. 156 (1998).

---

[5] In their complaint, plaintiffs ask for "at least $67,931.00 plus interest as allowed by law." In their Form 1040 for tax year 2014, plaintiffs indicate they are seeking a refund of $26,176.95. In their Form 1040 for tax year 2015, plaintiffs indicate they are seeking a refund of $41,755.35. Added together, the total refund of plaintiffs' claim for tax years 2014 and 2015 appears to be $67,932.30.

In the motion to dismiss, defendant asserts that plaintiffs' returns as filed for the 2014 and 2015 tax years clearly violate two of these four prongs: (1) there is insufficient data filled in on the Forms to calculate the plaintiffs' liability; and (3) plaintiffs did not make an honest and reasonable attempt to satisfy the requirements of the tax law. In its filings in this court, defendant, however, does not dispute plaintiffs' compliance with prongs two and four as described above. Regarding prong one, defendant argues that, by reporting zero dollars in wage income on their Forms 1040 and 4852, and a zero dollar gross distribution from Mr. Meissner's retirement plan on the filed Form 4852, plaintiffs "failed to include sufficient data on their return to permit the IRS to calculate their tax liability." The crux of defendant's argument is that tax returns reporting zero income, while still reporting federal withholdings, cannot constitute valid returns because they lack sufficient financial information necessary for the IRS to process the submitted tax returns.

In their response to defendant's motion to dismiss, plaintiffs state "[they] truthfully and lawfully know they have no 'income' beyond the exemption amount as reported on their 1040's. [T]he term 'income' is defined in the U.S. Constitution, the 1862 Revenue Act and in several U.S. Supreme Court rulings and has a very limited reach to whom it applies." Plaintiffs further allege that all the requirements in order for their tax returns to allow consideration of their claims for refund in this court have been met. Moreover, plaintiffs argue that:

> no properly-completed sworn return declaring contrary numbers, calculating an alleged tax liability, and therefore resulting in a competing government claim to [plaintiffs'] property has been made-as is required by law before the government can assess a tax (or assert ownership of the property for any other reason); therefore, no material facts are in dispute and as a matter of law (or of equity) the refund must be issued.

Plaintiffs contend that "if the court rules in favor of defendant and plaintiffs are forced to file according to the governments liken [sic], then [plaintiffs] will have to commit perjury, which plaintiffs cannot and will not do."

As discussed above, plaintiffs entered a value of zero dollars on both their 2014 and 2015 tax returns for those lines of the Forms concerning their income. In Waltner v. United States, the United States Court of Appeals for the Federal Circuit affirmed a case in which one of the plaintiffs had submitted a Form 4852 for the Form W-2, on which plaintiffs reported that wages were zero and alleged that the employer had "erroneously alleged payments of IRC section 3401(a) and 3121(a) wages." Waltner v. United States, 679 F.3d at 1330-31.[6] "In response to the Form's inquiry regarding efforts to obtain a Form W-2c, Corrected Wage and Tax Statement, Mr. Waltner stated 'none, since most

[6] Since the Federal Circuit issued its decision in Waltner, three other Federal Circuit cases, currently unreported, have cited Waltner and relied on the same reasoning. See Diamond v. United States, 603 F. App'x 947 (Fed. Cir. 2015); Williams v. United States, 548 F. App'x 618 (Fed. Cir. 2013), reh'g en banc denied (Fed. Cir. 2014); Diamond v. United States, 530 F. App'x 943 (Fed. Cir. 2013).

companies refuse to issue forms correctly listing payments of """wages'"" as defined in 3401(a) and 3121(a).'" Id. The Federal Circuit found that "a form that contains zeros in place of any reportable income does not constitute a valid tax return; it is not 'properly executed' for purposes of §301.6402-3(a)(5) and does not meet the specificity requirements imposed by §301.6402-2(b)(1)." Waltner v. United States, 679 F.3d at 1334.

Similarly, in Gregoline v. United States, a judge of this court was tasked with assessing the sufficiency of a plaintiff's tax return in which the plaintiff "reported a zero in every space on the form to show income." Gregoline v. United States, 99 Fed. Cl. 161, 167 (2011). The Gregoline court concluded that these Forms lacked essential financial information and that "[b]y submitting these invalid tax returns, [plaintiff] has not fulfilled the requirement of 26 U.S.C. § 7422(a)." The Gregoline court surveyed a number of earlier decisions and wrote:

> Tax returns that are filled out only with zeros do not contain sufficient financial information to be considered properly executed tax returns and cannot serve as a claim for a refund with the IRS. See, e.g., Waltner v. United States, 98 Fed. Cl. 737, 760-61 (2011) (holding that the returns in which plaintiffs allege that no wages were received did not provide the IRS with sufficient information for the IRS to calculate tax liability and therefore were not proper claims for a refund); Kehmeier v. United States, 95 Fed. Cl. 442, 445 (2010) (holding that this Court lacks jurisdiction over a plaintiff's refund claim because the plaintiff's zero tax return did not contain information sufficient to constitute a valid tax return); Hamzik[ v. United States], 64 Fed. Cl. [766,] 768 [(2005)]; (holding that plaintiff's tax return, which was replete with zeros, could not form the basis of a refund claim); Ulloa v. United States, No 1:06-CV-445 (NAM/RFT), 2008 WL 4186328, at *6 (N.D.N.Y. Sept. 9, 2008) (plaintiff did not have a valid refund claim when the tax return reported zero income and wages even though the plaintiff earned more than $100,000); Deyo v. Internal Revenue Service, No. Civ. 3:02CV 85(AVC), 2004 WL 2051217, at *3-4 (D. Conn. Aug. 2, 2004) (holding that tax return reporting zeros instead of income was not a valid tax return and could not serve as the jurisdictional prerequisite for a tax refund claim), aff'd, 134 F. App'x 475 (2d Cir. 2005); Taylor v. United States, No. Civ. 00-823 (TPJ), 2001 WL 721850, at *1-2 (D.D.C. Mar. 5, 2001) (holding that a return containing only zeros was not a valid income tax return and therefore the plaintiff did not have a valid refund claim); Maruska v. United States, 77 F. Supp. 2d 1035, 1039 (D. Minn. 1999) (finding that a claim replete with zeros in response to all inquiries 'was a nullity and, with no properly executed tax return filed, [plaintiff's] ostensible refund claim is rendered inoperative as well.').

Gregoline v. United States, 99 Fed. Cl. at 166-67 (last alteration in original).

In Hamzik v. United States, another decision by a judge of this court, cited by the Gregoline court, the plaintiff filed a Form 1040 return for the 2000 tax year on February

20, 2004, and listed "zeroes for all forms of income and adjusted gross income, claimed various dependency exemptions, and listed $23,420.55 in line 58 [on Form 1040] for 'federal income tax withheld from Forms W-2 and 1099.'" Hamzik v. United States, 64 Fed. Cl. at 766-67. In Hamzik, the judge wrote, "Section 7422(a) of the Code provides that a refund suit may not be filed 'until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.'"[7] Id. at 766. The Hamzik court also stated:

> A broad constellation of cases has held that a return which lacks essential financial information and, in particular, contains no recitation of taxpayer's income, is not a properly executed return for purposes of the tax laws. See, e.g., United States v. Goetz, 746 F.2d 705, 707 (11th Cir. 1984) ("alleged tax returns which do not contain any financial information are not 'returns'"); United States v. Mosel, 738 F.2d 157 (6th Cir. 1984) ("[I]t is not enough for a form to contain some information; there must also be an honest and reasonable intent to supply the information required by the tax code."); United States v. Rickman, 638 F.2d 182, 184 (10th Cir.1980) (the "return did not reflect his income" and therefore did not constitute a proper return); United States v. Moore, 627 F.2d 830, 835 (7th Cir. 1980), cert. denied, 450 U.S. 916, 101 S. Ct. 1360, 67 L.Ed.2d 342 (1981) (incomplete and inaccurate information on income does not make it a valid return when "there is no real attempt to comply with the requirements of filing a return."); United States v. Smith, 618 F.2d 280, 281 (5th Cir. 1980), cert. denied, 449 U.S. 868, 101 S. Ct. 203, 66 L.Ed.2d 87 (1980) ("'returns' which contained nothing but zeros and constitutional objections, plainly did not even purport to disclose the required information").

Hamzik v. United States, 64 Fed. Cl. at 767 (alteration in original). In a footnote, the Hamzik court wrote:

> As explained by the Seventh Circuit in *Moore:*
>
> "[I]t is not enough for a form to contain some income information; there must also be an honest and reasonable intent to supply the information required

[7] The court in Hamzik cited to Treasury Regulation § 301.6402-2, the current version of which states, in part:

> No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.

Treas. Reg. § 301.6402-2(b)(1) (2017).

> by the tax code . . . . In our self-reporting tax system the government should not be forced to accept as a return a document which plainly is not intended to give the required information."

Hamzik v. United States, 64 Fed. Cl. at 767 n.4 (alteration in original) (quoting United States v. Moore, 627 F.2d at 835).

Likewise, in Kehmeier v. United States, the plaintiff filed a Form 1040 return and a Form 4852 for Form W-2 for the 2008 tax year. On the Form 1040 line, "Wages, salaries, tips, etc.," plaintiff entered a zero and claimed as the total federal income tax withheld $42,251.00. Kehmeier v. United States, 95 Fed. Cl. at 443. The plaintiff in Kehmeier then sought a refund of $42,251.00. Id. at 444-45. The court in Kehmeier, indicated that among other declarations, "plaintiff submitted a corrected form 1099-B from Monex Credit Company showing $0 in proceeds from the sale of '5 Silver Ingots, 100 oz. ea.' In contrast, defendant states that Monex Credit Company reported to the IRS that plaintiff earned $6,650 in gross proceeds from the sale of these silver ingots." Id. at 444 n.1. The Kehmeier court stated that "[m]ost cases have concluded that tax returns reporting zero wages cannot serve as claims for refund because they fail to include information upon which a tax could be calculated." Id. at 445 (citing Hamzik v. United States, 64 Fed. Cl. at 767). The Kehmeier court concluded that plaintiff had not complied with the requirements of a properly executed return and that the plaintiff "could not reasonably have believed that his return contained information sufficient for it to be considered a valid tax return." Id.

Similar to the plaintiffs in Waltner, Gregoline, Hamzik, and Kehmeier, the plaintiffs in the case currently before this court did not submit sufficient information for tax year 2014 or tax year 2015 for either of the plaintiffs' returns, as filed, to be considered valid tax returns. For each of the tax years, the plaintiffs claimed they have a tax liability of zero dollars, allege that no wages were received by plaintiffs, but report various amounts in federal withholdings. Plaintiffs further alleged that income forms provided by their employers contain "erroneous information" and refused to supply them, even when specifically requested to do so by the IRS. In sum, plaintiffs did not provide the IRS with sufficient information for either the 2014 and 2015 tax years, so that the IRS could calculate their tax liability for either year. Therefore, the returns filed by the plaintiffs were neither proper returns, nor can they form the basis for valid refund claims in this court.

Plaintiffs attached Memorandum 2000127045 issued by the Office of Chief Counsel (OCC) for the Department of Treasury (OCC Memorandum) as an attachment to their response to defendant's motion to dismiss. The OCC Memorandum addressed

> [w]hether a Form 1040, on which the taxpayer enters the number 0 for every line of the return except the amount of tax withheld, the amount of the overpayment and the amount to be refunded, and includes attachments which protest the Constitutionality of the requirement that he pay federal income tax, constitutes a valid income tax return.

Although plaintiffs argue that the OCC Memorandum "says the plaintiff's [sic] claims are valid," a plain reading of the OCC Memorandum's guidance is to the contrary. The OCC Memorandum concluded:

> In the case of an official Form 1040 on which the taxpayer enters the number 0 for every line of the return except the amount of tax withheld, the amount of overpayment and the amount to be refunded, and has included attachments to the Form 1040 which protest the Constitutionality of the requirement that he pay federal income tax, the Internal Revenue Service ('Service') may treat the Form 1040 as a nullity provided there is sufficient evidence on or attached to the Form 1040 indicating a lack of honest and reasonable attempt on the part of the taxpayer to comply with the tax laws.

The court agrees with the reasoning in the OCC Memorandum, and the cases cited above, and finds that because for both the 2014 and 2015 tax years plaintiffs reported zero dollars for nearly every number, except for reporting the amount of tax withheld, the amount of the alleged overpayment, and the amounts plaintiffs claim should be refunded, their claims have not met the administrative requirements to be considered valid claims. Therefore, this court is without jurisdiction to adjudicate their claims. Although the plaintiffs attached to their tax Forms a series of letters and affidavits contesting the constitutionality of imposing federal taxes on the sums paid to them by their employers, they failed to provide sufficient information to the IRS on their filed tax returns or when responding to the questions sent to them by the IRS regarding both the 2014 and 2015 tax years. When the IRS twice requested additional information from plaintiffs, they twice declined to supply the IRS with the requested, additional information.

Defendant also argues that plaintiffs' unwillingness to file with their tax returns the W-2s provided by their employers or the 1099-R Mr. Meissner received for the distribution from his retirement account, combined with the plaintiffs' refusal to properly respond to the IRS information request letters, does not constitute an honest and reasonable attempt to comply with the tax laws. Defendant characterizes the plaintiffs' actions and reasons for not providing their W-2s as "tax defier" arguments. Defendant concludes that plaintiffs' actions "make it impossible to calculate plaintiffs' actual tax liability from their return." Plaintiffs have persisted to respond that they "are not tax protestors but are tax honesty citizens" and have filed their Forms in a manner consistent with the applicable laws. As noted above, plaintiffs assert that they declined to provide the tax Forms completed by their employers because they believed that the Forms contained "erroneous information." Plaintiffs argue that in completing their tax Forms, they "only relied on the history of the Rule of Law, the U.S. Constitution is very clear without ambiguity concerning direct taxes and indirect taxes as well as Supreme Court rulings on the subject matter . . . ." Plaintiffs assert that the zero wage sums reported on their tax Forms are accurate, and that the information reported by their employers is false because these sums fall outside the definition of "wages" and, therefore, are exempt from federal taxation. Accordingly, plaintiffs argue their returns were valid as filed and contain no omissions or inaccurate information.

Plaintiffs' assertions that their wages were exempt from federal withholdings because they are not federal employees and do not reside in this District of Columbia have been widely discredited. As summarized in Buser v. United States:

> [A]lthough plaintiff maintains that "I am not a person," the IRC defines a "person" to include *"an individual,* a trust, estate, partnership, association, company or corporation," 26 U.S.C. § 7701(a)(1) (emphasis added). Along these same lines, plaintiff asserts that he is not a "taxpayer." The IRC defines a "taxpayer" as "any person subject to any internal revenue tax." 26 U.S.C. § 7701(a)(14). Courts have previously deemed similar arguments to those raised by plaintiff here as frivolous. See, e.g., United States v. Sloan, 939 F.2d 499, 500-01 (7th Cir.1991) (rejecting similar arguments, which the court characterized as "strange"); Stoecklin v. Comm'r, 865 F.2d 1221, 1224 (11th Cir.1989) (characterizing arguments that appellant "is not subject to the income tax laws" as "frivolous"); Stubbs v. Comm'r, 797 F.2d 936, 938 (11th Cir.1986) (per curiam) (characterizing arguments that appellant was not a person required to file a tax return as "patently frivolous"); United States v. Studley, 783 F.2d 934, 937 & n. 3 (9th Cir.1986) ("[Appellant] contends that she is not a 'taxpayer' because she is an absolute, freeborn and natural individual. This argument is frivolous. And individual is a 'person' under the [IRC] . . . ."); Guthrie v. Comm'r, No. 14009–04, 2006 WL 1027727, at *1 (U.S. Tax Ct. Apr. 19, 2006) (characterizing petitioner's arguments that he "is not subject to Federal income tax," that "requiring him to pay income tax violates the U.S. Constitution," and that "he is not liable for income tax because he is Catholic" as frivolous).
>
> In short, "[t]axes are what we pay for civilized society," Compania General de Tabacos de Filipinas v. Collector of Internal Revenue, 275 U.S. 87, 100, 48 S. Ct. 100, 72 L.Ed. 177 (1927) (Holmes, J., dissenting), and "[a]ll individuals, natural or unnatural, must pay federal income tax on their wages," Lovell v. United States, 755 F.2d 517, 519 (7th Cir.1984). Plaintiff's arguments are frivolous and, in fact, confirm that the court lacks jurisdiction over the complaint.

Buser v. United States, 85 Fed. Cl. at 263-64 (emphasis and alterations in original) (internal references and footnote omitted); see also Ledford v. United States, 297 F.3d 1378, 1381 (Fed. Cir. 2002) ("[A] review of the pleadings indicates that Mr. Ledford bases his entitlement to this relief on his view that the federal tax code does not tax compensation received for personal labor. Mr. Ledford's view of the tax law is mistaken, as the tax code quite plainly defines income to include amounts received in compensation for services rendered."); Betz v. United States, 40 Fed. Cl. 286, 295 ("The I.R.C. applies to 'United States persons,' defined as 'citizen[s] or resident[s] of the United States.' 26 U.S.C. § 7701(a)(30)(A) (1994). In addition, the I.R.C.'s definition of 'United States' includes 'the States and the District of Columbia.' 26 U.S.C. § 7701(a)(9) (1994)." (alterations in original)), appeal dismissed, 155 F.3d 568 (Fed. Cir. 1998); Brown v. United States, 35 Fed Cl. 258, 269 (1996).

The OCC Memorandum provided by plaintiffs also provides instruction, as follows:

> In the "tax protestor" cases, the courts generally conclude that . . . the extent of the tax protestor arguments indicates a lack of an honest and reasonable attempt to comply with the law. U.S. v. Porth, 426 F.2d 519 (10th Cir. 1970) (no valid return where taxpayer's Form 1040 was devoid of income information and contained cites to the Constitution purportedly supporting taxpayer's refusal to complete the form . . . .

Similarly, in Diamond v. United States, a judge of this court found that submitting a tax return with zero dollars in reported wages, that conceals a portion of the actual wages received, and which does not allow the IRS to properly calculate tax liability, cannot be found to be reasonable. Diamond v. United States, 107 Fed. Cl. at 706. The court in Diamond v. United States reasoned that:

> When plaintiffs withheld information regarding wage and foreign income, they could not have reasonably believed that the requirements of filing a tax return had been fulfilled. United States v. Moore, 627 F.2d 830, 835 (7th Cir. 1980) ("[I]t is not enough for a form to contain some income information; there must also be an honest and reasonable intent to supply the information required by the tax code. . . . [T]he government should not be forced to accept as a return a document which plainly is not intended to give the required information."). Plaintiffs' failure to provide information regarding wage and foreign source income was plainly unreasonable.

Diamond v. United States, 107 Fed. Cl. at 706 (alterations in original); see also Moore v. United States, 627 F.2d at 835. Likewise, in Kiselis v. United States, the court determined that the plaintiff's tax return did not meet the honest and reasonable prong because the plaintiff sent the IRS information regarding his income that was contradicted by information it had received from other institutions, but failed to account for this discrepancy. Kiselis v. United States, 131 Fed. Cl. at 61; see also Cooper v. United States, 123 Fed. Cl. 226, 232 (2015). The Kiselis court found that "[p]laintiff was aware of the tax liability the IRS had assessed based on distributions reported by third-party financial institutions, but failed to report this on his Form 1040. As such, Plaintiff failed to exhibit an honest and reasonable intent to provide the requisite information." Kiselis v. United States, 131 Fed. Cl. at 61.

Finally, this court finds instructive the United States Tax Court's jurisprudence on the dictates of the "honest and reasonable" standard. The Tax Court also has consistently found that tax forms saturated with entries of zero regarding income cannot be found to satisfy the "honest and reasonable" prong. See, e.g., Oman v. Comm'r, T.C. Memo 2010-276, 100 T.C.M (CCH) 548 (2010) ("A Form 1040 on which a taxpayer fails to make an honest and reasonable attempt to comply with the tax law, such as the claiming of withholding without any reported wages or taxable distributions, is not a document that is worthy of being processed as a return . . . ."); Turner v. Comm'r, T.C. Memo 2004-251,

88 T.C.M. (CCH) 412 (2004) (finding plaintiff's tax return to be invalid because plaintiff's "Form 1040 contained zero entries for every line regarding his 1999 income" and because plaintiff "attached to his Form 1040 documents containing tax-protester rhetoric"); Cabirac v. Comm'r, 120 T.C. 163, 169 (2003) ("The Forms 1040 and 1040A that petitioner submitted contain only zero entries, and it is clear from the attachments to those returns that petitioner did not make an honest and reasonable attempt to supply the information required by the Internal Revenue Code."), aff'd, No. 03-3157, 2004 WL 7318960 (3d Cir. Feb. 10, 2004).

In the plaintiffs' case presently before this court, plaintiffs entered zero for income on their 2014 and 2015 tax year returns filed with the IRS. The income reported by plaintiffs on their tax returns was contradicted by the income reported to the IRS by their employers and retirement account manager. Furthermore, plaintiffs failed to provide additional information when requested to do so by the IRS, and in effect, concealed their true earnings from the IRS. The nonresponsive material including an inapplicable and irrelevant patchwork of legal and other authorities did not show a willingness to respond to the IRS inquires. This court finds that plaintiffs' behavior failed to meet the "honest and reasonable" efforts prong of the test set forth in Diamond v. United States, 107 Fed. Cl. at 705, and the other cases cited above.

## CONCLUSION

As the plaintiffs have failed to properly complete and submit valid tax returns to the IRS containing sufficient data for either the 2014 or 2015 tax years and have failed to provide additional information when requested to do so by the IRS, the court lacks jurisdiction to consider the plaintiffs' claims for refunds for the 2014 and 2015 tax years. Therefore, the defendant's motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction is **GRANTED**. Plaintiffs' complaint is hereby **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**

**MARIAN BLANK HORN**
**Judge**